1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| HOWARD LEE ROBERTS, | Civil No.        1:07-1197 JLS (POR) |
| Petitioner, | |
| | **ORDER:** |
| vs. | **(1) DENYING MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR STAY AND ABEYANCE; and** |
| TOM FELKER, Warden, et al., | |
| Respondents. | **(2)  DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Howard Lee Roberts, a state prisoner proceeding pro se, has filed an Amended Petition ("Pet.") in the United States District Court for the Eastern District of California challenging his Fresno County Superior Court conviction in case number F03901601-5 for second degree robbery.  (Lodgment No. 1, Clerk's Tr., vol. 1 at 166.)  Roberts claims the trial judge improperly denied his motion for a new trial, failed to appoint substitute counsel, failed to conduct a hearing pursuant to *People v. Marsden*,[1]

/ / /

---

[1]  Under *People v. Marsden*,  2 Cal. 3d 118 (1970), criminal defendants in California may ask the court to discharge their appointed attorney and appoint a new attorney when their right to effective representation is jeopardized.

improperly denied his request to represent himself and he was denied effective assistance of trial and appellate counsel.  (*See* Pet. at 10-16.)

The Court has considered the Amended Petition, Petitioner's Memorandum of Points and Authorities in Support of the Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse submitted by Roberts, the Lodgments submitted by Respondent and all the supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Petition is **DENIED.**

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The relevant facts as found by the state appellate court are as follows:

> On March 7, 2003, 69-year-old Rudy Gonzalez went to his car to retrieve a forgotten cell phone.  When he could not find it, Gonzalez laid down on the seat to check underneath the seats.  While Gonzalez was in this position, appellant placed his knee on Gonzalez's back, struck him several times in the head and ripped a gold chain off his neck.  Appellant also tore off a leg of Gonzalez's pants, including the pocket.  The pocket contained $419 in cash.  Gonzalez fought back and appellant ran away.  Gonzalez chased appellant in the car.  Ultimately, appellant fell down and Gonzalez tackled him.  Gonzalez was assisted by a passer-by, Jesse Cruz, who helped Gonzalez hold appellant down until police arrived.  Appellant disobeyed the officer's order to remain prone on the ground and was ultimately handcuffed.  When appellant was pulled up, the pant leg with the cash fell from underneath appellant.  The gold chain was found on the ground nearby.
>
> A bystander parked near Gonzalez witnessed a man with light complexion run from Gonzalez's car.  He thought man was either white or Hispanic.  He saw Gonzalez, noticeably shaken, exit the car.

(Lodgment No. 5 at 2-3.)

## III.   PROCEDURAL BACKGROUND

On August 13, 2003, the Fresno County District Attorney filed a First Amended Information charging Roberts with one count of second degree robbery, a violation of California Penal Code section 211. (Lodgment No. 1, Clerk's Tr., vol. 1 at 72.) The Information also alleged that Roberts had suffered six prior "strike" convictions, within the meaning of Penal Code section 667(b)-(i) and 1170.12, California's Three Strikes law.  (*Id.*)  Finally, the information alleged Roberts had two prior serious

1  felony convictions, within the meaning of Penal Code section 667(a)(1), three prior violent felony

2  convictions, within the meaning of Penal Code section 667.5(a) and one prior conviction for which he

3  served prison time and did not remain free of custody for five years following his release from prison,

4  within the meaning of Penal Code section 667.5(b).  (*Id.* at 73-77.)

5       Following a jury trial, Roberts was found guilty of second degree robbery.  (*Id.* 166.)  The trial

6  judge found the priors to be true at a bench trial.  (Lodgment No. 3, Rep.'s Tr., vol. 2 at 345-57.)

7  Roberts was sentenced to twenty-five years-to-life on count one and eleven years consecutive on the

8  remaining counts.  (Lodgment No. 1, Clerk's Tr., vol. 2 at 314-15.)

9       Roberts appealed his conviction to the California Court of Appeal for the Fifth Appellate

10  District, which affirmed his conviction in an unpublished opinion filed June 1, 2004.  (Lodgment No.

11  5.)  Roberts then filed a Petition for Review in the California Supreme Court, which was denied without

12  citation of authority.  (Lodgment No. 7.)

13       Roberts filed a petition for writ of habeas corpus in the California Supreme Court, which the

14  court summarily denied.  (Lodgment No. 8.)  Subsequently, on September 5, 2006, Roberts filed a

15  habeas corpus petition in the Fresno Superior Court, which that court denied in an unpublished, written

16  opinion filed on September 14, 2006.  (Lodgment No. 9.)  Next, Roberts filed a habeas corpus petition

17  in the California Court of Appeal on October 16, 2006, which that court denied without citation of

18  authority on November 9, 2006.  (Lodgment No. 10.)  On February 14, 2007, Roberts filed a habeas

19  corpus petition in the California Supreme Court, which the court denied with a citation to *In re Clark*,

20  5 Cal. 4th 750 (1993).  (Lodgment No. 11.)  Roberts filed another habeas corpus petition in the

21  California Supreme Court on February 19, 2008, which the court denied on July 9, 2008 with citations

22  to *In re Robbins*, 18 Cal. 4th 770, 780 (1998), *Clark*, 5 Cal. 4th 750, *In re Swain*, 34 Cal. 3d 300, 304

23  (1949) and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995).  (Lodgment No. 12.)

24       Roberts filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United

25  States District Court for the Eastern District of California on July 23, 2007.  On January 15, 2008, the

26  Court ordered Roberts to file an amended petition.  (*See* Doc. No. 9.)  Roberts filed an amended petition

27  in compliance with the Court's order and, a day later, filed a motion for stay and abeyance.  (*See* Doc.

28  Nos. 10, 11.)  The Court denied Robert's motion for stay and abeyance on June 24, 2008.  (*See* Doc. No.

25.)  Roberts filed a motion for reconsideration of the denial of his motion on August 15, 2008.  (*See* Doc. No. 27.)

Respondent filed an Answer on September 22, 2008, and Roberts filed a Traverse on October 17, 2008.  (*See* Doc. Nos. 32, 35.)  The case was reassigned to the Hon. Janis L. Sammartino, Visiting Judge for the Eastern District, on November 25, 2008.  (*See* Doc. No. 37.)

**IV.   <u>DISCUSSION</u>**

**A.   <u>Motion for Reconsideration</u>**

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. However, a motion for reconsideration may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b).  *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989); *In re Arrowhead Estates Development Co.*, 42 F.3d 1306, 1311 (9th Cir. 1994).

In *Osterneck*, the Supreme Court stated that "a postjudgment motion will be considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.'"  *Id.* at 174 (quoting *White v. New Hampshire Dep't of Employ't Sec.,* 455 U.S. 445, 451 (1982)).  Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.  There may also be other, highly unusual, circumstances warranting reconsideration."  *School Dist. No.1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted).  Under Rule 60(b), a motion for "relief from judgment or order" may be filed within a "reasonable time," but usually must be filed "not more than one year after the judgment, order, or proceeding was entered or taken."  Fed.R.Civ.P. 60(b).  Reconsideration under Rule 60 may be granted in the case of: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; or (3) fraud; or if (4) the judgment is void; (5) the judgment has been satisfied; or (6) for any other reason justifying relief.  Fed.R.Civ. P. 60(b).  Because Roberts' motion seeks reconsideration of an order denying a motion for stay and abeyance and not an order on the merits, it may properly be characterized as a motion pursuant to Fed.R.Civ.P. 60(b); *see also Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1463, n. 35 (9th Cir. 1992 (stating that an untimely motion for reconsideration is construed as a motion brought pursuant to Fed.R.Civ.P. 60(b).)

In the present case, Roberts filed a motion asking the Court to stay his current federal petition so he could return to state court to exhaust three additional claims which were not included in his First Amended Petition.  In its Order denying the motion for stay and abeyance, the Court concluded that Roberts had not met the factors set forth in by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) for granting a motion for stay.  Under *Rhines*, a petitioner must show there was "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 277.  The Court found that while Roberts' First Amended Petition was timely filed, the additional claims he sought to exhaust did not relate back to the timely filed petition under *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  Accordingly, because it was clear the one year statute of limitations contained in 28 U.S.C. § 2241(d) had run, the new claims were not "potentially meritorious." *See Rhines*, 544 U.S. at 277-78.  Moreover, the Court concluded Roberts' failure to seek to exhaust the additional claims while his petition was pending in federal court, a period of seven months, gave rise to an inference of "dilatory conduct." (Order dated July 23, 2008 [doc. no. 27].)  The Court also found Roberts had not provided the Court with any explanation for the delay in exhaustion, nor had he provided the Court with sufficient detail about the prospective claims to allow the Court to determine whether they were meritorious even if they were not time-barred.  (*Id.*)

In his motion for reconsideration, Petitioner alleges that he has established good cause for his failure to exhaust his additional claims because there is "no bright line rule of timeliness and almost no guidance as to what would constitute 'good cause' for delay." (Mot. for Recons. at 4.)  Petitioner asserts this confusion supports a conclusion that he has established good cause.  As to the merits of the claims he seeks to exhaust, Petitioner simply recites a list of four claims: (1) jury violation, (2) judicial misconduct; (3) violation of hearsay evidence; and (4) violation of evidence of gold chin [sic].  (*Id.* at 5-6.)  As he did in his motion for stay, he does not provide any detail as to the basis for these claims.  Lastly, Petitioner claims there is "no evidence nor any reason to infer that Petitioner has at any point been engaged in 'intentionally dilatory tactics.'"  (*Id.* at 6.)

None of the reasons for granting a Rule 60(b) motion are present here.  Petitioner does not allege there has been a mistake, inadvertence, surprise, excusable neglect, or fraud.  Nor has he presented any

1   newly discovered evidence or evidence that the judgment is void. The only basis upon which the motion

2   could be granted is if some other reason justifies relief. *See* Fed.R.Civ.P. 60(b). Petitioner's allegations

3   regarding his confusion over California's timeliness standards does not establish good cause for his

4   delay in exhausting, nor does it explain why he did not attempt to exhaust the additional claims while

5   his federal petition was pending. Petitioner has failed to establish the claims are meritorious and has

6   not provided the Court with any additional information about the claims. Finally, Petitioner has not

7   presented any additional information which would rebut the inference of dilatory conduct Petitioner's

8   delay in exhausting has established. Accordingly, Roberts' motion for reconsideration is **DENIED**.

9   **B.** **Merits**

10   Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

11   habeas corpus claims:

12   The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
     entertain an application for a writ of habeas corpus in behalf of a person in custody
13   pursuant to the judgment of a State court only on the ground that he is in custody in
     violation of the Constitution or laws or treaties of the United States.
14

15   28 U.S.C. § 2254(a) (2006) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

16   (d) An application for a writ of habeas corpus on behalf of a person in custody
     pursuant to the judgment of a State court shall not be granted with respect to any
17   claim that was adjudicated on the merits in State court proceedings unless the
     adjudication of the claim –
18

19   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
20   determined by the Supreme Court of the United States; or

21   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
22   court proceeding.

23   28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

24   "[The Anti Terrorism and Effective Death Penalty Act] establishes a 'highly deferential standard

25   for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

26   doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537

27   U.S. 19, 24 (2002)). Because Roberts's claims were adjudicated on the merits in state court, to obtain

28   / / /

1   federal habeas relief, he must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529

2   U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

Roberts raises five claims in his petition. First, he argues that the trial court erred when it summarily denied his motion for a new trial based on ineffective assistance of counsel and failed to appoint substitute counsel.  (Pet. at 10-12.)  Second, he alleges the trial court erroneously failed to conduct a *Marsden* hearing.  (*Id.* at 12-13.)  Third, Roberts claims the state court's denial of his request to represent himself violated his federal constitutional rights pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  (*Id.* at 13-14.)  Fourth, Roberts alleges his trial counsel was ineffective, and fifth, he alleges his appellate counsel was ineffective.  (*Id.* at 14-16.)  As to claims one through four, Respondent counters that the state court's denial of Roberts' claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 6-18.)  Respondent argues claim five is procedurally barred.  (*Id.* at 18-23.)

/ / /

1       1.     *Denial of the Motion for a New Trial and Failure to Appoint Substitute Counsel*

In claim one, Roberts claims the state trial judge committed federal constitutional error when he refused to permit Roberts to present grounds for his motion for a new trial and did not appoint substitute counsel. (*Id.*)[2]  Respondent counters that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 6-11.)

Roberts raised this claim in the petition for review he filed in the California Supreme Court, which denied the claim without citation of authority.  (Lodgment No. 7.)  Accordingly, the Court must "look through" to the state appellate court decision as the basis for its analysis.  *Ylst*, 501 U.S. at 801-06. That court wrote:

> First, appellant was given a full opportunity to present the basis for his request for a new trial.  On the date of sentencing, defense counsel informed the court that appellant was claiming that he had not understood the rights he had waived and would like the prior conviction allegations submitted to a jury.  Counsel also stated that appellant wanted to make a statement to the court.  The court asked appellant what he wished to say.  Appellant then told the court that he had been "misinformed" and "misrepresented" and that the facts concerning his version of the initial contact between he and Gonzalez had not been brought out by his attorney.  He also complained about a "deal" [footnote 3] defense counsel had purportedly made with the District Attorney

>> [Footnote 3: The nature of the deal was not identified, nor has appellant made any attempt in the trial court or in this court to explain the nature of the deal and why it might have been prejudicial to him.  It is not unusual for defense counsel and the prosecution to reach of number of agreements about the presentation of evidence during a trial.  The mere fact that some mutual stipulation was made is insufficient to establish inadequate representation by defense counsel or any justification for substitution of new counsel.  The record does reveal that defense counsel was prepared to impeach Cruz, who was anticipated to be a prosecution witness, with his numerous felony priors.]

> about not calling witness Jesse Cruz.  Appellant told the court that "this man [defense counsel] has brought damage into my fucking life."

> At this point, the court cut appellant off, stating, "You'll not talk like that."  The court told appellant "You're done talking at this point in time."  Appellant responded, "Man, I don't want this man representing me no more."  The court then stated that it had taken the waivers from appellant and found that appellant had knowingly, intelligently and voluntarily waived his right to a jury trial on the priors.  The court then stated, "any request for – I don't know if it was a request for a new trial or a request for a trial on the priors or perhaps just preserving the issue for appeal – but the request is denied."

---

[2]  Roberts also appears to argue that the trial judge erroneously denied his request to represent himself with regard to the motion for a new trial.  (Pet. at 10.)  Because that claim is essentially subsumed by Roberts' third claim, the Court will not address it in this section.

Appellant then told the court that he "would like to fight any strikes on my own, go pro per.  This man has ruined my life, Your Honor.  I don't want him as my attorney no more.  You're making me stay with a man who has literally dumped me for the District Attorney."  In response to this statement, the court stated it believed defense counsel had defended appellant with "a great deal of vigor and intelligence and presentation of the defense case just as it was presented to the jury.  But in any event, there no timely request at this point in time before the Court."

Although the court stopped appellant when he crossed the line of proper courtroom decorum and used profanity (*People v. Polite* (1965) 236 Cal.App.2d 85, 91-92 [trial judge has duty to see that proper courtroom demeanor is maintained]), the court did not prevent appellant from making a full personal presentation.  The record establishes that the trial court allowed appellant to articulate his position with respect to a new trial, even though he was represented by counsel at the time.  Appellant made no request to present additional argument or evidence, did not ask for new counsel, did not request an in camera hearing, and has presented no additional information on this appeal to this court which would suggest that his presentation to the trial court was incomplete. [footnote omitted.]

B.

Furthermore, we find no abuse of discretion in the court's decision not to appoint substitute counsel to argue the motion.  (See *People v. Smith* (1993) 6 Cal.4th 684, 690 [when defendant satisfies court that grounds exist, substitute counsel may be appointed to argue motion for a new trial brought on ground of inadequate representation].)  Appellant never asked to have substitute counsel appointed.  He only asked to be allowed to represent himself.  (*People v. Gray* (1990) 221 Cal.App3d 1065, 1070 [unless defendant requests substitute counsel, judge has not duty to inquire into claims of ineffective assistance to determine whether to appoint new counsel].)  He was allowed to state his position fully, as we noted.

Moreover, because the charges of incompetence related to trial matters and offered little hope of success on the merits, there was no duty to appoint substitute counsel to argue the motion.  (*People v. Daniels* (1991) 52 Cal.3d 815, 849 [no duty to appoint substitute counsel when trial court properly determines there is no merit to motion for new trial]; accord *People v. Diaz* (1992) 3 Cal.4th 495, 574 [if claim of inadequacy based on courtroom observation, trial court can generally resolve new trial motion without appointing new counsel; *People v. Bolin* (1998) 18 Cal.4th 297, 347; *People v. Riel* (2000) 22 Cal.4th 1153, 1175 [to succeed on a claim of ineffective assistance of counsel, an appellant must show that counsel's performance was deficient when reviewed by an objective standard of reasonableness under prevailing professional norms and he must show prejudice, i.e., that it is reasonably probable, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant].)

Appellant's explanation of the purported inadequacies of his trial counsel were that counsel had (1) misinformed him about the rights he would waive by having a court trial of the prior conviction allegations, (2) failed to present his version of the initial contact between appellant and Gonzalez [footnote 5], and (3) failed to call witness Jesse

[Footnote 5: Appellant argued to the trial court that "I was walking home one day and I stopped and asked this man for a light.  This man called me a nigger and we had words and this man struck me.  This was a fact that was not brought out by my attorney."]

Cruz.  All these claims relate to the conduct of the trial and waiver hearing previously observed by the trial court.

Based upon our review of the record, we agree with the trial court that there was no merit to any of them. First, appellant knowingly and intelligently waived his right to a jury trial on the priors. The trial court carefully explained to appellant the process and the rights appellant was waiving. Appellant stated unequivocally that he understood these rights and wanted the prior allegations tried by the court. Appellant does not contend otherwise on appeal. [footnote 6.]

[Footnote 6: We also note the proof of the prior convictions was overwhelming. A fingerprint expert matched the fingerprints in the 969b packet to appellant. The photograph in the packet matched the booking photograph of appellant, plus the trial court found the photograph in the packet was that of appellant. The packet was properly certified and there was no question raised at trial or on appeal about the authenticity of the packet.]

Second, Gonzalez repeatedly denied having any contact with appellant until he was attacked from behind in the car and denied calling appellant a nigger. Defense counsel was well within professional norms in failing to pursue a line of questioning he obviously perceived would likely not assist the defense. [footnote 7] Given the strong

[Footnote 7: This is particularly true when a line of questioning by a defendant is inconsistent with the defendant's only viable defense, which here was mistaken identity. Gonzalez's identification of appellant was challenged by evidence that Gonzalez did not see who attacked him until he had been punched in the head several times and was dizzy and "shook up." The defense argued that Gonzalez's identification of appellant was not reliable and that Gonzalez had followed and apprehended the wrong person. This was bolstered by the witness who saw a man running from the car and identified him as a white or Hispanic male. The witness testified the man did not have an afro hair cut and was "not dark in terms of an African-American person." Appellant is Black. The story that appellant said he wanted told would have confirmed his identity as the man who had the encounter with Gonzalez, and negated the only defense that made sense.]

evidence of the robbery and the attack on Gonzalez, it would have been folly to attempt to sell to the jury the story that the robbery did not occur and instead that the 69-year-old Gonzalez left his family, drove several blocks to ask appellant for a light and then proceeded to instigate a physical confrontation with the much younger appellant. The theory appellant is clinging to was inherently unbelievable and it is not surprising counsel chose not to pursue it. (*People v. Fosselman* (1983) 33 Cal.3d 572, 581 [reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission].) There were no other witnesses to the actual attack, and appellant had identified no one who would testify to his version of the facts other than himself, and he elected not to testify. [footnote omitted.]

Third, we will not second guess counsel's tactical decision about whether to call Jesse Cruz. (*People v. Bolin*, *supra*, 18 Cal.4th at 334 [whether to call witness is tactical decision]; *People v. Avena* (1996) 13 Cal.4th 394, 444 [a reviewing court should be careful not to second guess the wisdom of such tactical choices]; *People v. Blomdahl* (1993) 16 Cal.App.4th 1242, 1248 [trial tactics and strategy are within counsel's authority to control]; *People v. Lucky* (1988) 45 Cal.3d 259, 280-281 [disagreement between counsel and defendant over tactical decisions is insufficient to establish

inadequate representation].)  Cruz was not a witness to the robbery; he only saw the later

scuffle between Gonzalez and appellant after Gonzalez followed and caught a fleeing appellant.  Cruz told the responding police officer that he saw a physical fight between Gonzalez and appellant. [footnote omitted.]  According to Gonzalez, Cruz came to his aid and told him he would help hold appellant and that Cruz's wife was calling police.

Cruz's testimony posed the same problem for the defense as the line of questioning appellant wanted pursued with Gonzalez – it was inconsistent with the only defense available to appellant and was not likely to assist in appellant's cause given the strong evidence that Gonzalez was attacked and robbed at the car.

(Lodgment No. 5 at 3-8.)

The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel in any criminal prosecution.  U.S. Const. Amend. VI.  This guarantee includes the right to counsel at all critical stages of the proceedings against a defendant.  *United States v. Wade*, 388 U.S. 218, 226 (1967); *Gideon v. Wainwright*, 372 U.S. 335 (1963).  A motion for a new trial is such a critical stage, and "a state prisoner has a right to competent counsel in presenting a new trial motion." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990) citing *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir. 1989).  The Sixth Amendment guarantee also includes "'the correlative right to representation that is free from conflicts of interest.'"  *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

Where a defendant alleges substantial complaints about the performance of his counsel, that the attorney client relationship has irreparably broken down, or that a conflict of interest exists, a court must make a thorough inquiry into the circumstances of the problem, and, if effective representation cannot be provided because of the attorney-client conflict, substitute counsel must be provided.  *Campbell*, 408 F.3d at 1170; *Jackson*, 921 F.2d at 888; *see also Bland v. Cal. Dep't. of Corrs*., 20 F.3d 1469, 1476 (9th Cir.1994), overruled on other grounds by *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir.2000) (stating that when a criminal defendant moves for new counsel, the trial court must conduct an appropriate inquiry into the grounds for such a motion and resolve it on the merits before moving forward with the case).  The inquiry, however, "need only be as comprehensive as the circumstances reasonably would permit." *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir.1992) (internal quotation and citation omitted) (noting record may demonstrate extensive inquiry was not necessary). A trial judge must order a substitution of counsel if, after a hearing, the defendant demonstrates a breakdown in the attorney-client

relationship or the existence of "an actual conflict of interest." *Jackson*, 921 F.2d at 888.  There is no clearly established Supreme Court law, however, which *requires* a state court to appoint substitute counsel merely because a defendant's motion for a new trial rests upon the alleged incompetency of trial counsel.  *See Jackson*, 921 F.2d at 888 (such a requirement would be a "new rule" under *Teague v. Lane*, 489 U.S. 288 (1989)).

Contrary to Roberts' assertions, the trial judge did permit Roberts to state, on the record, what his concerns were with regard to his attorney, Mr. Sok.  At the sentencing hearing, Sok informed the judge that Roberts had told him he did not understand the rights he had given up by waiving his right to a jury trial on his prior convictions and that Roberts now wanted a jury trial on the validity of his prior convictions. (Lodgment No. 1, Clerk's Tr., vol. 2 at 318.)  Sok told the judge Roberts  wanted to make a statement.  Roberts told the court that he had been "misinformed" and "misrepresented," and that Sok had not presented evidence that Roberts had asked victim Gonzalez for a light, Gonzalez had called him a "nigger," they began to argue and Gonzalez hit Roberts.  (*Id.* at 318-19.)  Roberts also claimed Sok "made a deal" with the prosecutor to prevent a favorable witness, Jesse Cruz, from testifying.  (*Id.* at 319, 341.)  Roberts also stated he did not want Sok to represent him anymore.  (*Id.* at 319.)  Roberts has not shown what further information he would have presented to the trial judge had he been given the opportunity.  Given the record, the Court agrees with the state court's conclusion that Roberts received an adequate hearing on his allegations and that he failed to establish the existence of either a conflict or inadequate representation warranting substitution of counsel.  *See Jackson*, 921 F.3d at 888.  At most, the conflict between Roberts and Sok amounted to a disagreement regarding trial strategy.  Sok concluded the best defense to the charges was to attack the eyewitness identification of victim Gonzalez.  Roberts sought to portray himself as the victim of an unprovoked assault by the 69-year-old victim.  There is no Sixth Amendment right, however, to an attorney who shares a defendant's view of what strategy counsel should pursue.  *See United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998).

The trial court provided Roberts with all he was entitled to under federal law:  the opportunity to establish that there was either a breakdown in the attorney-client relationship or that an actual conflict of interest existed as the basis for the appointment of substitute counsel.  *See Campbell*, 265 F.3d 883; see also *Schell*, 218 F.3d at 1025;  *Jackson*, 921 F.2d at 888 (citing *Wood v. Georgia*, 450 U.S. 261,

273-74 (1981)).  Thus, the state appellate court's decision to uphold the trial court's denial of Roberts' motion for a new trial and substitute counsel neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, he is not entitled to habeas relief as to this claim.  *See Williams*, 529 U.S. at 412-13.

### 2. *Failure to Conduct a Marsden Hearing*

Next, Roberts contends the state court erred when it failed to conduct a *Marsden* hearing to determine whether to replace Sok as Roberts' attorney.  (Pet. at 12-13.)  Respondent counters that the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

Roberts raised this claim in the petition for review he filed in the California Supreme Court, which denied the petition without citation of authority.  (Lodgment No. 7.)  Accordingly, this Court must "look through" to the California appellate court's opinion denying the claim as the basis for its analysis.  *Ylst*, 501 U.S. at 801-06.  That court stated as follows:

> Appellant contends the trial court erred in failing to conduct a formal *Marsden* hearing.
>
> It did not.  Because appellant never requested substitution of counsel, the trial court was under no obligation to conduct a *Marsden* (*People v. Marsden*, (1970) 2 Cal.3d 118, 123) hearing.  (*People v. Lucky*, *supra*, 45 Cal.3d 259, 281 [when a defendant in some manner moves to discharge current counsel, the trial court's duty is to inquire as to the reasons for appellant's dissatisfaction and exercise its discretion in deciding whether to replace counsel].)  Appellant asked only that counsel be discharged so that appellant could represent himself.  (*People v. Clark* (1992) 3 Cal.4th 41, 103 [defendant never asked for appointment of substitute counsel, but only to discharge counsel and be allowed to represent himself.]; *People v. Crandall* (1988) 46 Cal.3d 833, 854, 855 [defendant alleged inadequate representation as a ground for wishing to represent himself pursuant to *Faretta*; because he did not request substitute counsel, *Marsden* procedures were not required], overruled on other grounds, *People v. Crayton* (2002) 28 Cal.4th 346.)
>
> Furthermore, even if we construed appellant's statements to the trial court as a request for new counsel, we would conclude that the trial court properly discharged its duty under *Marsden*.  A defendant is entitled to relief under *Marsden* if he or she can show inadequate representation or that the attorney-client relationship had irreparably broken down – in other words, when a failure to provide new counsel will substantially impair the right to effective assistance of counsel.  (*People v. Smith* (1993) 6 Cal.4th 684, 696; *People v. Crandell* [sic], *supra*, 46 Cal.3d 833, 854.)  Whether the proper showing has been made lies within the trial court's discretion, which will not be overturned on appeal absent a clear showing of abuse.  (*People v. Smith*, *supra*, 6 Cal.4th 684, 695-696.)  There is no requirement that a formal hearing be held, so long as the trial court is able to fulfill its duty to allow the defendant to state the basis for the request for new counsel.  (See *People v. Freeman* (1994) 8 Cal.4th 450, 480-481; *People v. Crandell* [sic], *supra*, 46 Cal.3d at pp. 833, 854.)

Such is the case here.  Appellant was given a full opportunity to, and did, state his reasons for dissatisfaction with counsel.  (*People v. Memro*, (1991) 11 Cal.4th 786, 787 [under *Marsden*, trial court must permit defendant to explain basis of his contentions and relate specific instances of counsel's inadequacies].)  The trial court had enough information concerning appellant's complaints to reach an informed decision about the adequacy of appellant's showing.  Appellant did not request an in camera hearing and the trial court had no duty to order one, given the nature of the complaints made by appellant.  The trial court was fully capable of evaluating appellant's criticisms based upon their nature and the court's own knowledge of the trial, the testimony of witnesses, and counsel's performance throughout.  (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1113.)  The trial court knew that Cruz was not a witness who would prove helpful to the defense.  It also knew that appellant's assertions regarding a fight with Gonzalez were patently unbelievable.  The court had taken the waivers from appellant regarding the trial of the prior convictions and knew appellant's assertion that he did not understand their significance was disingenuous.  The court also knew of the strong evidence against appellant and the laudable efforts of defense counsel to present the only reasonable defense available to appellant.

Nor does the record establish that the attorney-client relationship had deteriorated to the point that appellant's right to effective assistance of counsel was in jeopardy.  Appellant may have been frustrated with counsel's strategy and tactical choices, or with the jury's verdict, the trial court's decision on the priors, and the sentence they promised, but this hindsight remorse was not enough to justify counsel's removal.  (*People v. Barnett*, *supra*, 17 Cal.4th at p. 1108.)

(Lodgment No. 5 at 8-10.)

Roberts' *Marsden* claim is essentially a rehash of his first claim.  As discussed above in section

IV(B)(1), ". . .the state trial court's summary denial of a defendant's motion for new counsel without

further inquiry violate[s] the Sixth Amendment. [citation omitted.]."  *Schell*, 218 F.3d at 1025.  The

Ninth Circuit has stated that ". . .it is well established and clear that the Sixth Amendment requires on

the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on

the merits before the case goes forward."  *Id.*; *see also Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th

Cir. 2000) (stating that Ninth Circuit cases "may help us determine what law is 'clearly established'").

The ultimate question for the federal court is whether any conflict between Roberts and Sok was so great

that Roberts' Sixth Amendment right to counsel was violated.  *See Schell*, 218 F.3d at 1026.

It is true, as the state appellate court pointed out, that Roberts did not utter the talismanic words,

"I want a *Marsden* hearing" or "I want a new attorney."  But Roberts' repeated statements that he did

not want Sok representing him certainly triggered the state court's obligation under *Schell* to inquire into

Roberts' dissatisfaction and determine whether substitute counsel was required.  *See Schell*, 218 F.3d

at 1025.  As this Court has already determined, however, the state court judge adequately investigated

Roberts' complaints about Sok and reasonably determined that substitute counsel was not warranted. (Lodgment No. 1, Clerk's Tr., vol. 2 at 318-20, 337, 341; *Schell*, 218 F.3d at 1025.) The state appellate court's upholding of the trial judge's decision was not contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Roberts is not entitled to relief as to this claim.

      3.    *Denial of Roberts' Request to Represent Himself*

Roberts also alleges he was denied his right to represent himself in violation of his federal constitutional rights as outlined in *Faretta v. California,*, 422 U.S. 806 (1975).  (Pet. at 13-14.) Respondent argues that because there is no clearly established Supreme Court law which establishes when a *Faretta* motion is timely, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 11-15.)

Roberts raised this claim in the petition for review he filed in the California Supreme Court, which denied the petition without citation of authority.  (Lodgment No. 7.)  Accordingly, this Court must "look through" to the California appellate court's opinion denying the claim as the basis for its analysis. *Ylst*, 501 U.S. at 801-06.  That court wrote:

> Again, the trial court did not err.  Although a defendant has a federal constitutional right to self-representation (*Faretta v. California* (1975) 422 U.S. 806), in order to invoke an unconditional right to do so the defendant must make known the desire within a reasonable time before the commencement of trial.  (*People v. Burton* (1989) 48 Cal.3d 843, 852.)  If he or she fails to do so, any motion made thereafter is addressed to the discretion of the trial court.  (*Ibid.*)  In exercising that discretion, the trial court must consider the quality of counsel's representation up to that point, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow from the granting of such a motion.  (*People v. Clark* (1992) 3 Cal.4th 41, 98-99.)

> Here, appellant's motion was made after the close of trial and on the day set for judgment.  It was therefore untimely for purposes of invoking the absolute right of self-representation under *Faretta*.  (*People v. Barnett*, *supra*, 17 Cal.4th at pp. 1105-1106.)

> In addition, although appellant was obviously unhappy with the prospect of spending a significant amount of his remaining life in prison, he did not provide any good reason for dismissing counsel.  (*People v. Marshall* (1997) 15 Cal.4th 1, 23 [a motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied].)  Although appellant stated that he wanted to "fight" the prior strikes on his own, [footnote 10] the final bell had already rung on that particular contest — the trial on the prior convictions allegations was over.

1

2          Given the late stage of the proceedings, the lack of viable grounds for
       dissatisfaction with counsel's representation, the high quality of trial counsel's
3      representation observed by the trial court and the potential for delay in the proceedings,
       we cannot say it was an abuse of discretion to deny appellant's request for self-
4      representation.

5          Appellant, perhaps recognizing the futility of addressing the merits of the
       contention directly, argues that the trial court's failure in this case was in not inquiring
6      further in the reasons for appellant's request to represent himself. He argues that the trial
       court "asked no questions" and "considered no reasons."
7
8          This is a myopic reading of the record. The trial court denied the request after
       giving appellant an opportunity to voice his complaints. Nothing appellant said invoked
9      a need for further questioning. All of appellant's references were immediately
       understandable by the trial court because all the references related to matters the trial
10     court had observed. For these reasons, we find appellant's citation to *People v.
       Windham* (1977) 19 Cal.3d 121, 128, unpersuasive. The trial court's actions were not
11     inconsistent with *Windham*, which holds that, when faced with an untimely request for
       self-representation, the trial court must ascertain the factors underlying the request on
12     which to exercise its discretion and make a record for meaningful review. (*Id.* at p. 128.)
       The trial court did so in this case.
13     (Lodgment No. 5 at 10-12.)

14     Under *Faretta*, "[a] defendant in a state court criminal proceeding has an absolute right to be

15     represented by counsel or to represent himself." *Jackson*, 921 F.2d at 888, citing *Faretta*, 422 U.S. at

16     807. In order to invoke the right of self-representation, the defendant's request must be timely,

17     unequivocal and not made for purposes of delay. *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir.

18     2001). As Respondent correctly notes, however, "the Supreme Court has not clearly established when

19     a *Faretta* request is untimely, [and thus] other courts are free to do so as long as their standards comport

20     with the Supreme Court's holding that a request 'weeks before trial' is timely." *Marshall v. Taylor*, 395

21     F.3d 1058, 1061 (9th Cir.2005). As the state appellate court noted, in California, a *Faretta* request is

22     considered timely if it is made within a reasonable time before trial. *See People v. Burton*, 48 Cal.3d

23     843, 852 (1989). Roberts' *Faretta* request came after both the trial on his substantive crimes and the

24     trial on the validity of his prior convictions had concluded, clearly not within the "weeks before trial"

25     time frame found timely in *Faretta*. Accordingly, the state court's denial of Roberts' *Faretta* claim was

26     neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

27     *Williams*, 529 U.S. at 412-13.

28     / / /

       / / /

1

2         4.     *Ineffective Assistance of Counsel*

3        Roberts contends his trial counsel was ineffective.  As support for his claim, he refers to his

4 statements to the trial judge during the sentencing hearing in which he stated he was misinformed and

5 misrepresented.  (Pet. at 14; Lodgment No. 1, Clerk's Tr., vol. 2 at 318-19.)  Roberts also faulted his

6 lawyer for not presenting evidence that he had asked victim Gonzalez for a light, and that Gonzalez

7 called him a "nigger" and struck him.  In addition, Roberts claimed his attorney "made a deal with the

8 District Attorney . . .for Jesse Cruz not to take the stand."  (*Id.* at 319.)  Respondent argues the state

9 court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established

10 Supreme Court law.  (Answer at 15-18.)

11        Roberts raised his ineffective assistance of counsel claim in the habeas corpus petition he filed

12 in the California Supreme Court on March 15, 2006.  (*See* Lodgment No. 8.)  That court denied the

13 petition without citation of authority.  (*Id.*)  There is no underlying state court decision to which this

14 Court can "look through" under *Ylst*; the Court must therefore conduct an independent review of the

15 record to determine whether the denial of the claim was contrary to, or an unreasonable application of,

16 clearly established Supreme Court law.  *Himes*, 336 F.3d at 853.

17        To establish ineffective assistance of counsel, Roberts must first show that his trial counsel's

18 performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S.

19 668, 687 (1984).  "This requires a showing that counsel made errors so serious that counsel was not

20 functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Judicial scrutiny

21 of counsel's performance must be "highly deferential."  *Id.* at 689.  Second, he must show counsel's

22 deficient performance prejudiced the defense.  *Id.* at 687.  This requires a showing that counsel's errors

23 were so serious they deprived Roberts "of a fair trial, a trial whose result is reliable."  *Id.*  To satisfy the

24 prejudice prong, Roberts must demonstrate a reasonable probability that the result of the proceeding

25 would have been different absent the error.  *Id*. at 694.  "A reasonable probability is a probability

26 sufficient to undermine confidence in the outcome."  *Id*.  The prejudice inquiry is to be considered in

27 light of the strength of the prosecution's case.  *Luna v. Cambra*, 306 F.3d 954, 966 (9th Cir.), *amended*,

28 311 F.3d 928 (9th Cir. 2002).

1    Roberts' claim that he was "misinformed" and "misrepresented" is conclusory and, by itself,

2  cannot form the basis for federal habeas relief.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1999)

3  (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).  Even if the Court were to liberally construe this

4  claim as an argument that Roberts' attorney did not properly inform him of the consequences of waiving

5  his right to a jury trial on his prior convictions, Robert has not established either prong of *Strickland*.

6  In the face of the record to the contrary, he has not shown that counsel failed to adequately inform him

7  of the consequence of his waiver.  (*See* Lodgment No. 3, Clerk's Tr., vol. 1 at 227-30.)  Nor has he

8  established he was prejudiced by any error by counsel because he has not shown a jury trial on the priors

9  would have altered the outcome.  *Strickland*, 466 U.S. at 687-94.

10    Roberts also faults his attorney for failing to present evidence that Gonzalez called Roberts a

11  "nigger" and struck him as an alternative defense to the mistaken identity one mounted by Roberts'

12  attorney.  Roberts also appears to claim that a witness, Jesse Cruz, would have supported this defense.

13  (Pet. 14; Lodgment No. 1, Clerk's Tr., vol. 2 at 319, 341.)  Reviewing counsel's strategic decision to

14  pursue a mistaken identification defense with great deference, as this Court is required to do by

15  *Strickland*, it is clear that counsel's decision was not objectively unreasonable.  It is highly unlikely the

16  defense proposed by Roberts —  that he was a victim of an unprovoked attack by a 69-year-old man

17  who was on a family outing — would have been accepted by the jury, and the Court cannot fault

18  counsel's decision to pursue the more promising defense of mistaken identity.  *See Strickland*, 466 U.S.

19  at 689.  Even if counsel had pursued a defense that Gonzalez was the aggressor in the altercation with

20  Roberts, Cruz would not have helped the defense in any significant way.  According to the investigation

21  reports Roberts attached to the habeas corpus petition he filed in the California Supreme Court on

22  February 14, 2007, Jesse Cruz did not see the initial contact between Gonzalez and Roberts and could

23  not have supported Roberts' contention that the physical contact between Gonzalez and Roberts was

24  initiated by Gonzalez calling Roberts a "nigger" and striking him.  (*See* Lodgment No. 11 at 40.)  And,

25  given the fact that Cruz identified Roberts as the individual who was involved in the altercation with

26  Gonzalez, it is clear why defense counsel did not want to call him as a witness for the defense.

27  / / /

28  / / /

1    For all the foregoing reasons, the state court's denial of this claim is neither contrary to, nor an

2    unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

3    Roberts is not entitled to relief as to this claim.

4         5.    *Ineffective Assistance of Appellate Counsel*

5    Finally, Roberts alleges his appellate counsel was ineffective because she failed to allege that

6    his trial counsel was ineffective for several reasons. (Pet. at 14-16.) Respondent counters that the claim

7    is procedurally defaulted because Roberts raised it in a habeas corpus petition he filed in California

8    Supreme Court on February 14, 2007, and the court denied with a citation to *In re Clark*, 5 Cal. 4th 750

9    (1993). (*See* Lodgment No. 11.)

10    The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent

11    must first have "adequately pled the existence of an independent and adequate state procedural

12    ground...." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at issue,

13    Roberts must then "assert[] specific factual allegations that demonstrate the inadequacy of the state

14    procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state.

15    *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Roberts

16    can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

17    law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

18    justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

19    Respondent has specifically alleged that *Clark* is an independent and adequate state procedural

20    bar. (Answer at 18-23.) In *Bennett*, the Ninth Circuit held that a citation to *Clark* after the California

21    Supreme Court's decision in *In re Robbins*, 18 Cal. 4th 770 (1998) is independent of federal review.

22    *Bennett*, 322 F.3d at 581-82.   The California Supreme Court denied Roberts ineffective assistance of

23    appellate counsel claim with a citation to *Clark* in 2007. (Lodgment No. 11.) The Ninth Circuit recently

24    found that a citation to *Clark* satisfies Respondent's initial burden to plead adequacy under *Bennett*. *See*

25    *King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006). Accordingly, Respondent has satisfied his

26    initial burden under *Bennett* as to the *Clark* bar.

27    The burden now shifts to Roberts to put the defense at issue. *King*, 464 F.3d at 966-67; *Bennett*,

28    322 F.3d at 586. Roberts has presented no argument, evidence or " . . . specific factual allegations that

1   demonstrate the inadequacy of the state procedure . . . ." *Bennett*, 322 F.3d at 586. Accordingly, he has

2   failed to meet his burden under *Bennett*.  The claim is procedurally defaulted and federal review of the

3   claim is foreclosed unless Roberts can "demonstrate cause for the default and actual prejudice as

4   a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

5   result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

6          a.   *Cause*

7          The cause prong is satisfied if Roberts can demonstrate some "objective factor" that precluded

8   him from raising his claims in state court, such as interference by state officials or constitutionally

9   ineffective counsel.  *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991).  Roberts has not provided the

10   Court with any "objective factor" that precluded him from raising these claims in state court.

11          b.   *Prejudice*

12          "Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the

13   alleged error."  *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Roberts has failed to establish

14   prejudice because, as discussed below, his claims are meritless.  *Coleman*, 501 U.S. at 750.

15               1.   *Trial Counsel's Failure to Secure Witnesses, Listen to Roberts'*

16                    *Version of the Facts and Suppressing Roberts' Hospital Records*

17          Roberts claims appellate counsel should have argued that trial counsel was ineffective because

18   he "fail[ed] to secure witnesses for trial, fail[ed] to consult or listen to Petitioner's version of facts," and

19   suppressed Petitioner's hospital records. (Pet. at 15.)  "The proper standard for evaluating [a] claim that

20   appellate counsel was ineffective . . . is that enunciated in Strickland."  *Smith v. Robbins*, 528 U.S. 259,

21   285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).  A petitioner must show a reasonable

22   probability that he would have prevailed on appeal absent counsel's errors.  *Smith*, 528 U.S. at 285

23   (citing *Strickland*, 466 U.S. at 694).  "The performance component need not be addressed first '[i]f it

24   is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . ."  *Id.*

25   at 285, n.144 (citing *Strickland*, 466 U.S. at 697).

26          Roberts does not specify what witnesses trial counsel failed to call and how they would have

27   helped the defense.  Accordingly, he has not established he was prejudiced by appellate counsel's failure

28   to raise this claim.  *Smith*, 528 U.S. at 285.  The only witness Roberts has argued should have been

called is Jesse Cruz.  (*See* Pet. at 13; Lodgment No. 1, Clerk's Tr., vol. 2 at 319.)  In Section IV(B)(4) of this Order, the Court discussed how counsel's failure to call Cruz did not amount to ineffective assistance.  Appellate counsel's failure to raise this as an issue on appeal is similarly without merit as Roberts has not established either that appellate counsel's decision not to raise the claim was objectively unreasonable, or that he was prejudiced by appellate counsel's failure to do so.  *Smith*, 528 U.S. at 285

> ## 2.    *Trial Counsel's Failure to Impeach Prosecution Witnesses With Conflicting Statements*

Roberts also claims appellate counsel should have argued that trial counsel failed to impeach the prosecution's witnesses with conflicting statements.  (Pet. at 15.)  Again, Roberts does not specify what trial counsel failed to address on cross-examination and how further cross-examination of prosecution witnesses would have helped his case.  The record reflects that trial counsel thoroughly cross-examined victim Gonzalez and the two police officers presented by the prosecution.  (*See* Lodgment No. 3, Rep's Tr., vol. 1 at 105-27, 132-36, 139-41, 165-81, 186-92, 195-97.)  Without such specificity, he has not established he suffered any prejudice as a result of appellate counsel's alleged lapse.  *Smith*, 528 U.S. at 285.

> ## 3.    *Trial Counsel's Failure to File a Motion to Suppress and Subject the Prosecution's Case to a Meaningful Adversary Testing Process*

Roberts argues that appellate counsel should have contended that trial counsel was ineffective for failing to file a motion to suppress evidence and because he failed to "subject the prosecution's case to a meaningful adversary testing process."  (Pet. at 15.)  Once again, Roberts does not tell the Court upon what basis trial counsel should have filed a motion to suppress or in what way trial counsel "failed to subject the prosecution's case to a meaningful adversary testing process."  As previously noted, counsel's cross-examination of prosecution witnesses was thorough and competent.  (*See* Lodgment No. 3, Rep's Tr., vol. 1 at 105-27, 132-36, 139-41, 165-81, 186-92, 195-97.)  Thus, Roberts has not established prejudice under *Smith*.  *Smith*, 528 U.S. at 285.

/ / /

/ / /

1          4.     *Trial Counsel's Failure to Permit Roberts to Testify in his Own Defense*

2          Finally, Roberts alleges appellate counsel should have argued that trial counsel failed to permit

3    him to testify in his own defense.  (Pet. at 16.)  Roberts has presented no evidence that trial counsel

4    prevented him from testifying, nor has he shown how his testimony would have altered the outcome of

5    his case.  Thus, he has not established either prong of the *Strickland* test for appellate counsel.  *Smith*,

6    528 U.S. at 285.

7          c.     *The Claim is Procedurally Defaulted*

8          For all the foregoing reasons, Robert has failed to "demonstrate cause for the default and actual

9    prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the

10   claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  Accordingly,

11   his ineffective assistance of appellate counsel claim is procedurally defaulted, and federal review of the

12   claim is barred.  *Id*.

13   **V.    CONCLUSION**

14         Having carefully considered Roberts' motion for reconsideration, Roberts' Amended Petition,

15   Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, Roberts's

16   Traverse, and all the documents and legal authorities submitted by the parties, for all the foregoing

17   reasons the Court **DENIES** the Motion for Reconsideration and **DENIES** petition.  The Clerk of Court

18   is directed to enter a judgment denying the motion and the petition with prejudice.

19         **IT IS SO ORDERED.**

20

21   DATED:  June 18, 2009

22                                    *Janis L. Sammartino*
                                      Honorable Janis L. Sammartino

23                                    United States District Judge

24

25

26

27

28